SOUTHGATE BANK, Plaintiff-Appellee, v. DON L. WOODEN, a/k/a DONALD L. WOODEN et al., Defendants-Appellants.

(No. 73-57;

Second District—April 3, 1974.

William E. Schirger, of Schirmer, Schirger, Graff & Begar, Ltd., of Rockford, for appellants.

Pedderson, Menzimer, Conde, Stoner, Ferolie & Spelman and Hyer Gill, Brown & Remencius, both of Rockford (James C. Spelman and Dale F. Conde, of counsel), for appellee.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

From the granting of a preliminary injunction and order of possession, defendants appeal claiming that the trial court erred in striking a portion of the *praecipe* pertaining to the record in another case, in granting the petition for a temporary restraining order, and in granting the preliminary injunction and order of possession.

The plaintiff loaned the corporate defendant $168,513.13, evidenced by a demand note and security agreement which pledged the corporate assets as collateral. In addition, the individual defendants executed notes: one in the amount of $70,850 and one for $4,825.66 (both due January 3, 1973), and a $10,000 note payable by monthly installments of $200.38, its remaining balance to be paid by October 31, 1977. Pledged as collateral in these notes and the security agreements were the individual defendants' business assets, real property, personal property and lease agreements.

On December 28, 1972, in case No. 72-3758, plaintiff secured an order temporarily restraining the corporate defendant from transferring or disposing of certain of the pledged assets. On January 2, 1973, the same judge who issued the order dissolved it.

On December 29, 1972, prior to the above order being dissolved, plaintiff, deeming itself insecure because of an accumulation of events,[1] went before another judge and filed a complaint, No. 72-3773, requesting a preliminary and permanent injunction, possession of the collateral and damages for the wrongful detention of the collateral. At the same time, plaintiff filed a second petition for an order temporarily restraining defendants from removing, transferring or disposing of the pledged assets; the order was granted without notice or bond. On January 5, 1973, hearing commenced on plaintiff's complaint as amended and on defendants' motion to vacate the second temporary restraining order.

At trial, a bank official testified that the notes were then in default but that no written notice has been given the defendants in accordance with the security agreements. On January 10, after 4 days of hearing, the court granted plaintiff possession of certain property pledged as collateral, enjoined defendants (by way of preliminary injunction) from interfering with plaintiff's possession, and dissolved the temporary restraining order of December 29, 1972.

Defendants appeal the orders entered in case No. 72-3773. Their *praecipe* sought to include the record in case No. 72-3758 although that record was not made part of the evidence in the appealed case. On plaintiff's motion, the court struck from the *praecipe* the request for pleadings filed in case No. 72-3758. Defendants argue that the court acted without authority and that to permit such action would in effect eliminate evidence on issues which they sought to have reviewed. In support of their argument, defendants infer that the trial court took judicial notice of the entire record in the former case and reason that this entitled them to include that record in the instant appeal. The inference is unfounded. All that the trial court noted from case No. 72-3758 was that both counsel appeared before another judge and the original restraining order did not include the vehicles and equipment pledged as securities. These facts do not create a material omission of introduced evidence in the case at bar nor are they material to the issues raised here. (Supreme Court Rule 329 (Ill. Rev. Stat. 1973, ch. 110A, § 329); *Joseph D. Foreman & Co. v. Neri,* 6 Ill.App.3d 313, 316 (1972).) We find no error on this issue.

It is next argued that the trial court erred by allowing the second

---

[1](1) Knowledge of a judgment against the individual defendant, Don Wooden, for $30,030.05; (2) knowledge of the filing of a lawsuit against the individual defendant, Don Wooden, for $52,056.88; (3) knowledge of an accountant's report showing that there was a misstatement of the corporate defendant's net loss and that it should be adjusted upward from $4,251.66 to $51,845.66; (4) receipt by the bank of $65,000 worth of checks drawn on the corporate defendant's account which contained no funds; and (5) the movement of produce and vehicles in contravention of the oral agreement to wind down the business.

temporary restraining order. This was an appealable order (*Bohn Aluminum & Brass Co. v. Barker,* 55 Ill.2d 177 (1973)) from which the defendants did not appeal. Further, the order was dissolved by the trial court, as requested by the defendants, and became moot.

It is also contended that the court erred in granting the preliminary injunction and order of possession since the plaintiff failed to comply with the notice provision of the security agreements. The relevant parts of the notes provide:

> "In addition to all other rights possessed by it, the Bank, * * * may * * * (b) notify the parties obligated on any of the Collateral to make payment to the Bank of any amounts due or to become due thereunder; * * * (e) exercise such additional rights and powers, if any, with respect to any security for * * * any of the Liabilities, as may be provided in any written instrument (in addition to this Note).
>
> In the event of non-payment, when due, of any amount payable on any of the Liabilities, or if the Bank shall feel insecure for any reason whatsoever, * * * (1) this Note and all other Liabilities may, at the option of the Bank, and without demand or notice of any kind, be declared, and thereupon immediately shall become due and payable * * *."

The relevant parts of the security agreements provided:

> "7. * * * (c) if default is made in the due and punctual payment in full of any indebtedness secured hereby when and as any part of such indebtedness shall become due and payable; * * * or (e) if any warranty, representation or statement made or furnished to Southgate by or on behalf of the Debtor in connèction with this agreement proves to have been false in any material respect when made or furnished; * * *
>
> 8. Debtor agrees that upon the occurrence of any of the events of default set forth in paragraph 7 hereof, the full amount remaining unpaid on the indebtedness secured hereby shall at the option of Southgate, by notice in writing sent by mail * * *, be and become due and payable forthwith * * *."

■ ■ ■ Since plaintiff is not only seeking to collect the amount due under the notes but also seeks to acquire possession of the security pledged, we find the notice clause within the security agreement to be applicable. Illinois law is clear as it concerns the foreclosure on the security of a note. The institution of a lawsuit on the note is notice of the most unequivocal character that the holder wishes to avail himself of his option to accelerate the repayment of the debt and to foreclose on the security. (*Curran v. Houston,* 201 Ill. 442, 446 (1903); *Heeren v. Smith,* 276 Ill.

App. 438, 441 (1934).) However, where the agreement contains a clause whereby the debtor must be given notice of the creditor's election, the notice provision must be complied with prior to acting on the elected option. *Clevinger v. Ross,* 109 Ill. 349, 352 (1884). See also *Meek v. Electrical Engineering Equipment Co.,* 282 Ill.App. 616, 618-19 (1935); *Straus v. Turnquist,* 279 Ill.App. 572, 579-81 (1935); *Home Federal Savings & Loan Association v. La Salle National Bank,* 130 Ill.App.2d 285, 288 (1970).

We find that before plaintiff could seek to gain possession of the collateral under the notes, it was required to mail the defendants written notice that it was exercising its option under the security agreement. Were it not for other factors we would agree with defendants that the plaintiff was premature in its action. The record here, however, reveals intervening facts that this court cannot dismiss from consideration. On December 23, 1972, an accounting firm that examined the corporate defendant's books reported to plaintiff that the net loss on the corporation's balance sheet should be adjusted upward from $4,251.66 to $51,845.36. On the first business day thereafter, prompted by this information, the parties held a meeting during which the findings of the accounting firm were disclosed to the defendants. They were told that no further funds would be advanced to the corporation, that the operations of the corporation should be "wound down," and that plaintiff's representative would be placed on the premises to oversee such winding down. Defendants agreed to this arrangement. The next day, December 27, 1972, defendants' spirit of cooperation was further evidenced by Wooden's call to plaintiff informing them that he was unable to raise the needed funds. In this conversation, Wooden stated that he was going to turn the keys over to plaintiff and that, because his house was involved, he and his wife could move into an apartment. Plaintiff explained to the defendant that by the terms of his individual notes for $70,850 and $4,825.66, they would wait until January 3, 1973, before calling those due and that presently only the corporate defendant's demand note for $168,513.13 was being called due and payable. Later that evening, Mr. Wooden, Mr. Schirger (defendants' attorney) and Mr. Daughtry (the corporate vice president), met with the bank official who advised them that plaintiff wished to take an inventory and remove any perishable goods. No objection was made by the defendants and a load of produce was sent to Chicago that evening.

The apparent veil of cooperation was removed when, on the following afternoon, plaintiff's representative observed the movement of trucks and produce, contrary to the previous agreement. Mr. Shirger was observed on the corporate premises and, when asked by plaintiff's representative

about the movement of the produce and vehicles, responded, "We're cleaning out the warehouse." He asked if the representative had a court order to stop them. Having no order, plaintiff's representative left to get one.

As previously related, plaintiff received the temporary restraining order in case No. 72-3758 that same evening and, on the following day, instituted the present action in case No. 72-3773.

The question presented by these facts is whether the defendants are estopped by their statements and conduct from insisting on notice of plaintiff's intention to exercise its rights under the notes and security agreements.

> "The general rule is that where a party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, the one guilty of the expressions or conduct will not be allowed to deny his utterances or acts to the loss or damage of the other party. The party claiming the estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the true facts. Fraud is a necessary element but it is not essential that there be a fraudulent intent. It is sufficient if a fraudulent effect would follow upon allowing a party to set up a claim inconsistent with his former declarations." (*Dill v. Widman*, 413 Ill. 448, 455-56 (1953).

■■ Defendants here had actual knowledge that the plaintiff felt insecure on the notes but was not calling them all due and payable because of the defendants' apparent veil of good faith cooperation. Plaintiff had no way of knowing that defendants' appearance of cooperation was merely a guise under which they could attempt to remove, conceal and dispose of the security. Upon learning the true state of affairs, plaintiff was forced to take immediate action. Under these circumstances, we hold that the defendants were estopped in claiming the defense of "no written notice sent by mail" for such claim would be inconsistent with defendants' former declaration of a voluntary turnover of the security.

Finally, defendants claim that the manner in which the preliminary injunction was granted constitutes a direct violation of the principles announced in *Fuentes v. Shevin*, 407 U.S. 67, 32 L.Ed.2d 556, 92 S.Ct. 1983 (1972). We cannot agree. Four days of hearings preceded the orders entered in the instant case.

For the reasons given, the judgment of the trial court is affirmed.

Judgment affirmed.

GUILD, P. J., and SEIDENFELD, J., concur.